UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| CRYSTAL B., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:22-cv-356-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Crystal B. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 9. Plaintiff also filed a reply. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed applications for DIB and SSI on April 5, 2019, alleging disability beginning February 10, 2019 (the disability onset date), due to herniated discs, joint dysfunction in her back, knee pain, overactive bladder, and depression. Transcript ("Tr.") 15, 78-79, 282-92, 319. The claims were initially denied on July 17, 2019, and again upon reconsideration on October

3, 2019, after which Plaintiff requested an administrative hearing. Tr. 15, 80-105. On January 6, 2021, Administrative Law Judge Vincent M. Cascio ("the ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Nicholas DiVirgilio, an attorney. Tr. 15. Zach Fosberg, an impartial vocational expert, also appeared and testified. Tr. 15.

The ALJ issued an unfavorable decision on February 10, 2021, finding that Plaintiff was not disabled. Tr. 15-32. On March 14, 2022, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's February 10, 2021 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15.

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his February 10, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since February 10, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: obesity, lumbar degenerative disc disease, asthma, gastroesophageal reflux disease (GERD), status post hysterectomy, overactive bladder, idiopathic microhematuria, depressive disorder, anxiety disorder and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[2] except the claimant can occasionally stoop, balance, crouch, kneel, crawl and climb ramps and stairs, but can never climb ropes, ladders or scaffolds. The claimant cannot have exposure to unprotected heights or hazardous machinery. The claimant must avoid exposure to respiratory irritants such as fumes, odors, dusts, gases and poorly ventilated areas. The claimant can understand, remember, and carry out simple, routine and repetitive work-related tasks. The claimant would be off task five percent of the workday in addition to regularly scheduled work breaks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 13, 1982 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 10, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 15-32.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on April 5, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 32. The ALJ also determined that based on the application for supplemental security income protectively filed on April 5, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## <u>ANALYSIS</u>

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ improperly evaluated the October 2020 "Medical Source Statement Regarding Mental Health" completed by Monir A. Chaudhry, M.D. ("Dr. Chaudhry"), and Julie Curran, MS.Ed. ("Ms. Curran"), and assessed Plaintiff's mental RFC based on his own lay opinion. *See* ECF No. 7-1 at 1, 12-17. Next, Plaintiff argues that the ALJ's mental RFC finding[3] was not supported by substantial evidence

---

[3] The Court notes that Plaintiff only challenges the ALJ's mental RFC finding (with the exception of Plaintiff's arguments regarding the RFC's off-task limitation for bathroom breaks) and does not challenge the ALJ's physical RFC finding. *See* ECF No. 7-1 at 17-22. Accordingly, the Court will discuss the ALJ's physical RFC finding only insofar as it relates to the off-task limitation. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *Patterson v. Saul*, No. 19-CV-465-LGF, 2020 WL 5642187, at *4 (W.D.N.Y. Sept. 22, 2020) (because plaintiff's contentions were limited to the ALJ's treatment of mental impairments, any challenge to the ALJ's consideration of physical impairments was waived (citing *Glover v. Saul*, 2020 WL 90768, at * 5 (W.D.N.Y. Jan. 8, 2020))); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

because "the ALJ rejected all of the medical opinions which provided functional assessments of Plaintiff's capabilities." *See id*. at 17-22. Finally, Plaintiff argues that the 5% off-task time limitation in the ALJ's RFC finding was not supported by substantial evidence. *See id*. at 22-25.

In response, the Commissioner argues that the ALJ properly evaluated the medical opinion evidence and properly considered the regulatory the factors of consistency and supportability in finding the opinion of Dr. Chaudhry and Ms. Curran only partially persuasive. *See* ECF No. 9-1 at 7-14. Next, the Commissioner argues that substantial evidence supports the ALJ's mental RFC finding, and the ALJ was not required to rely on medical opinions to assess the RFC finding, as Plaintiff argues. *See id*. at 14-21. The Commissioner further argues that the ALJ properly analyzed Plaintiff's mental health treatment records and reasonably found that, while the objective medical evidence did not support Plaintiff's allegations about the extent of her mental impairments, the record did support a finding Plaintiff was moderately limited in concentration, persistence and pace. *See id*. As for Plaintiff's final argument, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff would be off task no more than 5% of the day, and Plaintiff has failed to show that she is more limited than the ALJ found. *See id*. at 21-24.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record, including treatment notes, the opinion evidence, and Plaintiff's activities

of daily living, and reasonably concluded that Plaintiff could perform sedentary work with additional exertional and non-exertional limitations. Furthermore, the ALJ's finding that the opinion of Dr. Chaudhry and Ms. Curran was only partially persuasive was supported by substantial evidence. Finally, the Court finds that the ALJ clearly explained his rationale for including a 5% off-task limitation in the RFC to accommodate Plaintiff's need for bathroom breaks. Accordingly, the Court finds no error in the Commissioner's final decision.

On February 7, 2019, Plaintiff attended a follow-up visit at SCLN Neurosurgery and reported radiating lumbar pain that had worsened since her last visit.  Tr. 555. She reported occasional numbness in the left foot, and ambulation was difficult favoring her left side. *Id*. She recently had a left SI (sacroiliac) joint injection which provided relief for five days; and she had previously tried physical therapy in 2002, which did not provide relief and caused worsening. *Id*. She was referred to pain management and advised to avoid strenuous activity, pushing, lifting, and pulling more than 20-25 pounds, and no bending and twisting of the spine. Tr. 558.

On March 1, 2019, Plaintiff had an initial evaluation with Albert Sung Jin Koh, D.O. ("Dr. Koh"), at Pain Treatment Center at Sawgrass, complaining of lower back pain with bilateral radiation down lower extremities; the pain had been ongoing for 20 years and had been progressively worsening. Tr. 450. Past imaging showed minimal spinal stenosis secondary to disc bulge at L2-L3 and L3-L4 and minimal central canal narrowing secondary to disc bulge and moderate left foraminal narrowing at L4-L5. Tr. 454. Dr. Koh indicated that Plaintiff had "some foraminal narrowing on the left which would be amenable to epidural injections." Tr. 456. However, Plaintiff preferred to try non-invasive treatment before considering injections; Dr. Koh prescribed Gabapentin. *Id*.

On April 5, 2019, Plaintiff presented for an acute primary care visit with Cortni C. Monroe, PA-C ("Ms. Monroe"), at JMH Medical Practice ("JMH"), complaining that she felt contractions during urination. Tr. 565. She stated that "she wonder[ed] about going on disability because of the restrictions from her back." *Id*. She reported that Gabapentin prescribed by her pain management gave her diarrhea and did not help with pain; and she still had knee pain. Tr. 565, 567. Plaintiff appeared "uncomfortable" on physical examination, and mental status and judgment were normal. Tr. 568-69.  Ms. Monroe encouraged Plaintiff to discontinue Gabapentin and follow up with her pain management provider. Tr. 569. She also referred Plaintiff to urology for her urinary issues. *Id*.

On May 10, 2019, Plaintiff followed up with pain management specialist Dr. Koh. Tr. 615-16. Dr. Koh discontinued Gabapentin and prescribed Lyrica. Tr. 616.

On May 14, 2019, Plaintiff was seen by Ms. Monroe at JMH, complaining of "mainly left leg numbness" and symptoms of cough and cold with fever for two days. Tr. 561-64. Plaintiff reported using Tylenol and ibuprofen and asked about having repeat imaging of her back. Tr. 561. She again reported that Gabapentin caused diarrhea, but her insurance would not cover Lyrica. *Id*. Ms. Monroe diagnosed left leg numbness and low back pain and ordered imaging of the lumbar spine. Tr. 564.

On June 19, 2019, Plaintiff underwent a psychiatric consultative examination with Susan Santarpia, Ph.D. ("Dr. Santarpia"). Tr. 591-95. Plaintiff drove herself to the appointment, traveling a distance of approximately 80 miles. Tr. 592. She reported sleep disturbance, weight and appetite fluctuations, panic attacks, and depressive symptoms; and she was taking psychotropic medications prescribed by her primary care physician. *Id*. On mental status examination, Dr. Santarpia noted that Plaintiff had a euthymic mood; she was cooperative; maintained normal eye

8

contact and normal speech; and she related well, demonstrated good grooming and hygiene, normal affect and normal thought processes. Tr. 593-94. Examination results also showed normal attention, concentration, recent and remote memory, cognitive function, intelligence, fund of knowledge, insight and judgment. Tr. 594. Dr. Santarpia noted that Plaintiff independently cared for her personal hygiene, managed her own money, drove, socialized with friends and family, cared for two cats, spent her days a primary caregiver, used a cell phone, and was on social media. *Id*. Dr. Santarpia opined that Plaintiff did not have significant mental functioning limitations other than a mild impairment in regulating emotions, controlling behavior, and maintaining well-being; Tr. 594-95.  Dr. Santarpia indicated that Plaintiff's difficulties were caused by high levels of caffeine intake; and the results of the evaluation were consistent with psychiatric problems which did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. Tr. 595.

On June 19, 2019, Plaintiff underwent an internal medicine consultative examination with Russell Lee, M.D. ("Dr. Lee"). Tr. 596-603. On physical examination, Plaintiff had limited cervical, lumbar, and shoulder range of motion. Tr. 599-600. Dr. Lee diagnosed lower back pain, left medial plica syndrome, asthma, overactive bladder, iron deficiency, depression, anxiety, and OCD. Tr. 600. Dr. Lee opined that Plaintiff had moderate limitations for activities involving prolonged sitting, prolonged standing, walking great distances, bending, squatting, and lifting, and she should avoid smoke, dust, and known respiratory irritants. Tr. 600-01. An x-ray of the lumbosacral spine showed slight levoscoliosis (Tr. 602), and an x-ray of the left knee was negative. (Tr. 603).

On June 25, 2019, Plaintiff presented to Cattaraugus County Department of Community Services for an initial assessment. Tr. 717.  She stated she was having issues with depression and

anxiety and "had some life stressors that were contributing to this." *Id*. She reported lack of motivation, tearfulness, sense of worthlessness, and feeling useless; she also reported panic attacks "over nothing" and indicated that she had been having them over the past ten years. *Id*. She stated that she did not like people, but she had been able to perform her job in customer service at TOPS because it was "role playing." *Id*. Mental status examination showed mostly benign findings, with euthymic mood, cooperative behavior, normal activity and eye contact, normal appearance, full affect, clear speech, logical thought processes, normal thought content, normal cognition, and average intellect and insight; her judgment was marked as being within normal limits, although an "impaired ability to make reasonable decisions" was noted. Tr. 723-24. Her provider noted GAD-7 (generalized anxiety disorder) and PHQ-9 (patient health questionnaire) screening scores consistent with severe anxiety and depression, but her DLA (daily living activity) screening score showed only mild impairment. Tr. 725. July 2020 therapy notes indicated that Plaintiff was "doing fairly well." Tr. 751.

On July 2, 2019, Plaintiff presented to Ms. Monroe for her annual exam. Tr. 797-801. Plaintiff reported that she had started treating at the Counseling Center in Olean and had seen the urologist. Tr. 797. She also reported she had attended a disability physical examination. *Id*. On physical examination, Plaintiff appeared "uncomfortable," but findings were otherwise unremarkable. Tr. 800-01. On psychiatric examination, Ms. Monroe noted that Plaintiff's speech was soft and mumbled, and she spoke with long pauses before answers; her affect was flat and sad; and her mood was anxious. Tr. 801.

On July 12, 2019, state agency medical consultant M. Kirsch, M.D. ("Dr. Kirsch"), reviewed Plaintiff's file as it existed on that date and opined that Plaintiff could perform light

exertion work and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Tr. 88-90.

On July 15, 2019, state agency psychiatric consultant E. Kamin, Ph.D. ("Dr. Kamin"), reviewed Plaintiff's file as it existed on that date and opined that Plaintiff had mild limitations in the ability to adapt or manage herself and no limitations in the ability to understand, remember, or apply information, interact with others, and concentrate, persist, or maintain pace, and her impairments were non-severe. Tr. 86.

On August 15, 2019, Plaintiff followed up at Pain Treatment Center at Sawgrass for low back pain radiating to the left leg and symptoms the same since her last visit. Tr. 611. She had tenderness to palpation of the left SI joint and lumbar paraspinal muscles bilaterally; limited range of motion of the lumbar spine; positive seated straight leg raise testing on the left; positive Fortin's sign on the left; and decreased sensation in the left lower extremity. Tr. 612-13. Robaxin and physical therapy were prescribed. Tr. 613.

On August 22, 2019, Plaintiff followed up with Ms. Monroe for depression and left knee pain. Tr. 803. Plaintiff was crying and tearful, and Ms. Monroe prescribed Sertraline for mood. Tr. 806-07.

On September 27, 2019, state agency medical consultant S. Sonthineni, M.D. ("Dr. Sonthineni"), reviewed Plaintiff's file as it existed on that date and affirmed Dr. Kirsch's opinion. Tr. 116-18.

On September 30, 2019, state agency psychiatric consultant A. Chapman, Psy.D. ("Dr. Chapman"), reviewed Plaintiff's file as it existed on that date and affirmed Dr. Kamin's opinion. Tr. 114-15.

On October 21, 2019, Plaintiff followed up with Ms. Monroe and reported that she did not notice a difference with Sertraline. Tr. 809. However, she reported that she went to counseling weekly and found this helpful. Tr. 811. She also reported that her back was really bothering her lately; she had just finished four weeks of physical therapy which did not help much; and a lumbar support also did not help much. *Id*. On examination, Plaintiff appeared uncomfortable with depressed affect and sad mood, and her Sertraline dosage was increased. Tr. 812-13. Ms. Monroe advised Plaintiff to continue counseling. Tr. 813.

On November 15, 2019, Plaintiff followed up at Pain Treatment Center at Sawgrass with continued pain and the same symptoms as the last visit. Tr. 681-82. Robaxin was switched to Flexeril, and she was instructed to continue physical therapy. Tr. 683.

On December 18, 2019, Plaintiff followed up with Ms. Monroe for depression and had no concerns. Tr. 814. She thought Methocarbamol helped her pain a little more but made her tired. Tr. 816. Ms. Monroe prescribed Abilify. Tr. 819.

On February 17, 2020, Plaintiff followed up with Ms. Monroe for depression. Tr. 819-24. She reported that she had been taking Sertraline 100 mg daily instead of 150 mg daily because she had been confused about the prescription. Tr. 820, 822. She "guess[ed] she was doing okay on this medication," and her mood was okay. *Id*. She was attending counseling and wished it was more often than every three weeks.[4] Tr. 822. Ms. Monroe instructed Plaintiff to increase Sertraline dosage to 150 mg and advised Plaintiff to contact her therapist about increasing her visits to every two weeks. Tr. 824.

---

[4] The Court notes that in October 2019, Ms. Monroe indicated that Plaintiff was attending counseling on a weekly basis. *See* Tr. 811.

On February 24, 2020, Plaintiff had a follow-up visit with Dr. Koh for chronic low back pain. Tr. 692. She reported that physical therapy was not effective, and Flexeril was continued. Tr. 696.

On May 18, 2020, Plaintiff attended a follow-up with Ms. Monroe for depression. Tr. 825-29. Plaintiff reported that Aripiprazole (Abilify) gave her nightmares, and the increased dosage of Sertraline was not helping. Tr. 825. Plaintiff also reported that she was no longer seeing Dr. Koh for pain management and wanted Ms. Monroe to continue her prescription for Flexeril. *Id*. She also reported that she was taking Omeprazole for heartburn, but it was not helping much; Flexeril helped her spasms but not her pain; she got a cane to see if this would help her walk, but it did not; and she had more numbness in her legs with walking than before. Tr. 827. On examination, Plaintiff appeared uncomfortable; she had a furrowed brow; speech was slowed and monotonous; affect was flat and sad; and mood was depressed. Tr. 828-29. Ms. Monroe continued Flexeril; encouraged Plaintiff to try to be active; increased Omeprazole and encouraged Plaintiff to avoid known food triggers; she also advised Plaintiff to meet with her psychiatrist for medication adjustments. Tr. 829.

On May 22, 2020, Plaintiff had a follow-up visit with University of Rochester Medical Center ("URMC") Urology. Tr. 697-701. She reported severe bladder pain on her drive to the appointment, and she continued to have urinary urgency, frequency, and hesitancy. Tr. 697. She reported that Flomax had not been helpful. A cystoscopy to examine the urinary tract was negative. *Id*. Plaintiff reported drinking 12 cups of coffee per day (down from three pots) and one to two 12-ounce cans of regular soda. *Id*. On examination, Plaintiff was oriented with normal mood and affect; she was not in acute distress; and her abdominal examination was normal. Tr. 700.

On June 19, 2020, Plaintiff attended a tele-psychiatric assessment for depression, PTSD, and difficulty sleeping. Tr. 745. Examination notes showed normal muscle strength and tone, normal range of motion, good grooming and normal gait and station. Tr. 745-47. Plaintiff was already on "top doses" of Sertraline and Duloxetine, which were continued; and lithium was started. Tr. 747. Mental status examination showed that Plaintiff was depressed with a flat affect, but she was cooperative; had normal appearance, normal eye contact, and normal activity; clear speech; logical thought processes; and normal thought content, cognition, insight and intelligence. Tr. 748-49. Her diagnoses included bipolar II disorder and tobacco use disorder, severe. Tr. 749.

On September 11, 2020, Plaintiff attended a depression follow-up visit with Ms. Monroe. Tr. 830-34. She reported she had tried patches to quit smoking; but they made her sick; a lower dose was recommended. Tr. 830.

On September 15, 2020, Plaintiff followed up for psychiatric medication management reporting that she was stable; she had some headache; and she slept well at night. Tr. 951. She was compliant with her medication and reported no adverse reactions or side effects. *Id*. Lithium, Sertraline, and Duloxetine were continued. Tr. 952. On examination, Plaintiff was cooperative with euthymic mood; full affect, clear speech; her thought processes and thought content were normal; and her judgment, insight and cognition were normal. Tr. 953.

On October 2, 2020, treating providers Dr. Chaudhry and Ms. Curran completed a mental health medical source statement. Tr. 902-07. Dr. Chaudhry and Ms. Curran opined that Plaintiff was limited but satisfactory in the ability to remember work-like procedures, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, be aware of normal hazards and take appropriate precautions, understand, remember, and carry out detailed instructions, set realistic goals or make

plans independently of others, interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places, and use public transportation; she was seriously limited in the ability to maintain attention for two hour segments, maintain regular attendance and be punctual within customary, usually strict tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriate to changes in a routine work setting, deal with normal work stress, and deal with stress of semiskilled and skilled work. Tr. 904-905. Dr. Chaudhry and Ms. Curran also indicated that Plaintiff's psychiatric condition exacerbated her physical symptoms, stating that "[p]ersistent anxiety and depressive moods caused hypervigilance in the body, resulting in muscle tension, stomach aches, changes in appetite, and poor sleeping habits." Tr. 905.

Plaintiff first argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ improperly relied on his lay opinion to craft Plaintiff's mental RFC. *See* ECF No. 7-1 at 12-22. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding

these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claims on April 5, 2019, and therefore, the 2017 regulations are applicable to her claims.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor

in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the

Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's arguments, the ALJ properly considered the opinion evidence and relied on other evidentiary sources to make an RFC finding that accounted for all of Plaintiff's credible limitations, as supported by the record. Tr. 20-30.  *See* 20 C.F.R. §§ 404.1527, 416.927. Furthermore, the ALJ was not required to rely on an opinion that mirrored the RFC, as Plaintiff argues. *See* ECF No. 7-1 at 12-22. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Moreover, there is no requirement that an ALJ's RFC finding be based on a medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental functioning). Thus, contrary to Plaintiff's argument, the ALJ was not required to craft an RFC that mirrored a medical opinion and was not bound to adopt the entirety of any opinion. *Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the RFC finding did not match any opinion in the record); *see also Camille v. Colvin*, 652 F. App'x 25, 28 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on *inter alia*, the testimony of Camille that she credited.").

Here, the ALJ clearly explained his findings regarding the persuasiveness of the medical opinions in terms of the "most important factors" of supportability and consistency. Tr. 26-30. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In October 2020, Dr. Chaudhry and Ms. Curran opined that Plaintiff was "seriously limited" in her ability to, *inter alia*, maintain attention, maintain regular attendance, sustain an ordinary routine, work in coordination or proximity to others, complete a normal workday and workweek, respond appropriately to changes in a routine work setting, and deal with normal work stress; and she had "limited but satisfactory" ability to make simple work decisions, accept instructions and respond appropriately to supervisors, interact appropriately with the public, and maintain socially appropriate behaviors. Tr. 904-07. Upon review, the Court finds that substantial evidence supports the ALJ's persuasiveness finding.

The ALJ explained that he found Dr. Chaudhry and Ms. Curran's opinion "partially persuasive" because it was "only somewhat consistent with the record," and because they primarily supported their findings with Plaintiff's subjective reports regarding her limitations and symptoms, rather than with medical findings. Tr. 29-30. For example, the ALJ noted that when asked to explain their opined limitations and include the medical and clinical findings that supported them, Dr. Chaudhry and Ms. Curran wrote in three separate places, "Writer does not observe client in settings outside of session and cannot comment on ability to complete tasks. [Plaintiff] reports challenges with fatigue, poor sleeping habits, motivation, concentration, and persistent anxiety." Tr. 29, 904-05. As the ALJ reasonably observed, "[t]his shows that Ms. Curran and Dr. Chaudhry are not relying on objective observation and examination to support opined limitations, but rather the claimant's reports of limitations and symptoms." Tr. 29. When asked to describe the clinical findings that demonstrate the severity of Plaintiff's condition, Dr. Chaudhry and Ms. Curran stated, "[Plaintiff] reports that chronic fatigue and threat of worsening physical pain make motivation to complete day-to-day activities challenging. . . ." Tr. 902. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *cf. Ratliff v. Barnhart*, 92 F. App'x 838, 840 (2d Cir. Mar. 18, 2004) (applying the former regulations and holding that an ALJ may reject a medical opinion based on claimant's representations); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012) (subjective statements alone were insufficient to support a doctor's limitations based predominantly thereon).

In addition, Dr. Chaudhry's own mental status examination findings do not support the serious functional limitations stated in the opinion. In July 2020, Dr. Chaudhry observed that Plaintiff's mood was depressed and anxious and her affect was flat, but Dr. Chaudhry also found that Plaintiff was cooperative; her appearance and motor activity were within normal limits; her speech was clear; her thought processes was logical; there was no evidence of perceptual problems

or abnormal thought content; her cognition, including attention and concentration, were within normal limits; her intelligence was estimated to be average; and her insight and judgment were within normal limits. Tr. 747-48. In September 2020, Dr. Chaudhry made similar findings, except that by that time, Plaintiff's mood was euthymic, and her affect was full. Tr. 952-54. Thus, the ALJ reasonably found that Dr. Chaudhry and Ms. Curran's opinion of significant limitations in several areas of mental functioning was not fully persuasive. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability).

As the ALJ also observed, in contrast to Dr. Chaudhry and Ms. Curran's finding that "[Plaintiff] report[ed] challenges with fatigue, poor sleeping habits, motivation, concentration and persistent anxiety," treatment records frequently show that Plaintiff's concentration and attention were intact, and she slept well. Tr. 29, 594, 724, 746, 748, 764, 904, 905, 951. Treatment records also show that she denied fatigue. Tr. 460, 471, 746, 800, 842, 853 915, 926, 941. In addition, the ALJ noted that, while Dr. Chaudhry and Ms. Curran stated that "[Plaintiff] report[ed] that chronic fatigue and worsening physical pain make motivation to complete day-to-day activities challenging," her DLA score indicated that Plaintiff had only a mild impairment of daily activities. Tr. 29, 725, 902.

The ALJ further noted Plaintiff's "fairly benign" mental status examination findings, including cooperative behavior, normal appearance, normal eye contact, normal activity, clear speech, logical thought processes, normal thought content, normal cognition, normal insight, and normal intelligence. Tr. 22, 26, 28. For instance, in June 2019, consultative psychiatric examiner Dr. Santarpia found on mental status examination that Plaintiff was cooperative with good eye contact and hygiene; her speech was adequate; her thought process was coherent and goal directed with no evidence of perceptual disturbances; her affect was full and appropriate; her mood was

euthymic; her sensorium was clear; she was oriented to person, place, and time; her attention and concentration were intact; her memory was intact; her cognitive functioning was estimated to be in the average range; and her insight and judgment were fair. Tr. 593-94.

Furthermore, mental status examinations throughout 2018, 2019 and 2020 showed generally unremarkable findings. Tr. 446, 455, 461, 472, 557, 568-69, 573-74, 579, 613, 623, 633, 638-39, 674, 679, 695, 817-18, 823-24, 915, 927, 942. During a June 2019 psychiatric assessment, Plaintiff was cooperative; her appearance and motor activity were within normal limits; her mood was euthymic; her affect was full; her speech was clear; her thought processes was logical; there was no evidence of perceptual problems or abnormal thought content; her cognition, including attention and concentration, were within normal limits; her intelligence was estimated to be average; and her insight and judgment were within normal limits. Tr. 723-24. The ALJ also considered that, while Plaintiff's GAD and PHQ-9 scores were consistent with diagnoses of severe anxiety and depression, her DLA score showed only a mild impairment. Tr. 22, 725. Thus, the ALJ reasonably concluded that based on her DLA score and the benign mental status examination findings, Plaintiff remained functional despite her impairments. Tr. 22-23, 26. The ALJ further noted that by 2020, Plaintiff's symptoms were improving, and she reported that she was stable and doing well from a psychiatric standpoint. Tr. 26, 28, 951.

In addition to considering the objective medical evidence, the also ALJ appropriately considered Plaintiff's reported activities. Tr. 26; *see* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (consideration of objective medical evidence); 404.1529(c)(3)(i), 416.929(c)(3)(i) (consideration of daily activities). For example, the ALJ noted that Plaintiff drove, including driving 80 miles to and from her consultative examination, which demonstrated that she was able to handle the inherent stresses of driving. Tr. 26, 592. She also reported watching television and playing games,

activities which the ALJ noted require concentration, persistence, and pace. Tr. 26, 28-29, 343, 347.

Plaintiff's assertion that the ALJ did not adequately articulate why he found Dr. Chaudhry and Ms. Curran's opinion only partially persuasive is meritless. The ALJ explicitly stated that the opinion was "only somewhat consistent with the record," and he provided record citations supporting his conclusion, including evidence showing mostly benign mental status examination findings, as outlined above. Tr. 28-29, 592-95, 723-24, 747-48, 764, 788, 829, 928, 953. Plaintiff's argument that Dr. Chaudhry and Ms. Curran's opinion was entitled to "controlling weight" because they were treating providers is similarly lacking in merit. *See* ECF No. 7-1 at 16. Under the regulations applicable to Plaintiff's claims, the ALJ was only required to explain his consideration of the factors of supportability and consistency and was not required to explain how he considered the other remaining regulatory factors, such as the length of the relationship and the frequency of examinations.[5] *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Thus, the ALJ reasonably declined to find the opinion more persuasive simply based on the treating relationship, and for the reasons discussed above, the ALJ's finding regarding the consistency and supportability of the opinion was supported by substantial evidence. Accordingly, the ALJ reasonably found Dr. Chaudhry and Ms. Curran's opinion only partially persuasive.

Plaintiff's second argument—that the ALJ's mental RFC finding was based on his own lay opinion—is similarly unavailing. *See* ECF No. 7-1 at 17-22. According to Plaintiff, the ALJ's mental RFC was not supported by substantial evidence because he "rejected all of the medical

---

[5] An ALJ is required to consider several factors in determining how much weight an opinion should receive, including the length of the relationship and frequency of examinations, nature of the relationship, medical evidence that supports the opinion, consistency with the record, and if the physician's specialty is relevant to the impairment. *Burgess v. Astrue*, 537 F. 3d 117, 129 (2d Cir. 2008). As previously explained, however, under the revised regulations, the ALJ is no longer required to give special deference to the opinion of a treating physician over and above that of other sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

opinions which provided functional assessments of Plaintiff's capabilities." *Id*. As explained above, however, the ALJ was not required to rely on an opinion that mirrored the RFC because the ALJ is tasked with weighing all of the relevant medical and other evidence, not just medical opinions. to reach an RFC finding. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Tricarico*, 681 F. App'x 98 at 101; *Matta*, 508 F. App'x at 56.

Here, the ALJ properly considered the opinion evidence and Plaintiff's mental health treatment records and found that the objective medical evidence did not support Plaintiff's allegations of problems with concentration. Nevertheless, the ALJ afforded Plaintiff the benefit of the doubt by partially crediting her subjective complaints and assessing moderate limitations in concentration, persistence, and pace. Tr. 23, 26, 28-29. The ALJ accordingly found that these moderate limitations could be accounted for by restricting Plaintiff to simple, routine, and repetitive tasks. Tr. 28-29. Thus, the ALJ crafted a mental RFC that was based on the medical evidence and accounted for Plaintiff's subjective reports regarding her symptoms and limitations.

As discussed above, the ALJ considered Plaintiff's mental health treatment and explained that the medical evidence showed Plaintiff's mental impairments caused symptoms such as anxiety, depressed mood, panic, and mood swings; however, the ALJ determined treatment records also showed Plaintiff had been responsive to medication and was doing well from a psychiatric standpoint. Tr. 28, 951. The ALJ also reasonably found that Plaintiff's reported activities demonstrated the ability to concentrate and persist at tasks. Tr. 29. Accordingly, the ALJ found Plaintiff had no more than a mild limitation in most areas of functioning but a moderate limitation in concentration, persistence, and pace. Tr. 28.

Courts in the Second Circuit have routinely concluded that an ALJ's finding of moderate limitations in concentration, persistence, and pace can be accounted for by an RFC for simple,

routine, and repetitive tasks. *See, e.g.*, *Hintsa N. v. Comm'r of Soc. Sec.*, No. 20-CV-6335-FPG, 2021 WL 3615704, at *2 (W.D.N.Y. Aug. 16, 2021); *see also McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (affirming the ALJ's decision because medical evidence in the record demonstrated that McIntyre could engage in simple tasks despite moderate limitations in concentration, persistence, and pace); *Johnson v. Berryhill*, 17-CV-00684, 2018 WL 4539622, at *6 (W.D.N.Y. Sept. 21, 2018) (explaining that an RFC limitation to simple, routine tasks accounted for claimant's "difficulties in maintaining attention, concentration, performing complex tasks, and learning new tasks"); *Ana H. v. Comm'r of Soc. Sec.*, 19-CV-432, 2020 WL 6875252, at *10 (W.D.N.Y. Nov. 23, 2020) (RFC properly accounted for plaintiff's moderate limitations in concentration, persistence, and pace by limiting her to simple, routine, and repetitive tasks). Accordingly, the ALJ's finding that Plaintiff retained the mental RFC to understand, remember, and carry out simple, routine and repetitive work-related tasks was supported by substantial evidence.

Finally, there is no evidentiary gap in the record, as Plaintiff argues. *See* ECF No. 7-1 at 22. The ALJ obtained mental health records from Plaintiff's treating sources, ordered a consultative psychiatric evaluation, and considered the opinions from the state agency mental health consultants. Thus, the evidence of record was adequate to make his decision. An ALJ need not further develop the record "when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *See Janes v. Berryhill*, 710 F.App'x 33, 34 (2d Cir. Jan. 30, 2018) (summary order (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996); *see also* 20 C.F.R. §§ 404.1520b(b)(1), 416.920b(b)(1)-(2) (If the evidence is incomplete or inconsistent but sufficient for the ALJ to make a decision, she will make a decision based on the existing evidence); *Rosa*, 168 F.3d at 79 n.5 (citing *Perez* v, 77 F.3d at 48) ("Where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.").

Thus, Plaintiff has failed to demonstrate any obvious gaps in the record, and to the extent Plaintiff argues that remand is warranted to obtain an additional opinion because the ALJ did not rely on medical opinion evidence in assessing the RFC finding, her argument fails for the reasons already explained. *See* ECF No. 7-1 at 22. The ALJ was not required to craft an RFC that mirrored a medical opinion and was not bound to adopt the entirety of any opinion. *Schillo*, 31 F.4th at 77-78; *Camille*, 652 F. App'x at 28 n. 5.

In her third and final point of error, Plaintiff argues that the ALJ erred in finding that she would be off task 5% of the workday in addition to regularly scheduled work breaks, "a highly specific limitation not based on any substantial evidence." *See* ECF No. 7-1 at 22. First, as discussed above, the ALJ's RFC finding need not correspond perfectly with a medical opinion, and it remains Plaintiff's burden to demonstrate that she cannot perform the RFC. *See Schillo*, 31 F.4th at 78; *Matta*, 508 F.App'x at 56. Here, substantial evidence supports the ALJ's RFC finding that Plaintiff would be off task no more than 5% of the day, and Plaintiff has failed to show that she is more limited.

When evaluating Plaintiff's RFC, the ALJ considered, *inter alia*, Plaintiff's reports of urinary symptoms including frequency and urgency. Tr. 25, 54-55. However, the ALJ reasonably found that, despite these symptoms, Plaintiff remained functional and there was no evidence supporting her testimony that she required an excessive amount of additional time off due to these symptoms. Tr. 25, 446, 455, 557, 573-74, 579, 599, 612, 623, 633, 638, 674, 678, 694, 817-18, 823-24, 915, 927, 942. In addition to the longitudinal medical record, consisting of multiple mental health and medical appointments and two consultative examinations, the ALJ noted that, despite

27

her testimony that she often needed to use the bathroom every 10 minutes, Plaintiff did not ask to pause the 45-minute administrative hearing to use the restroom. Tr. 26, 54, 39-65. *See Gates v. Astrue*, 338 F. App'x 46, 49 (2d Cir. 2009) (summary order) (holding the ALJ may "take account of a claimant's physical demeanor in weighing the credibility of her testimony as to physical disability") (internal citation omitted). The ALJ also observed that Plaintiff's reported activities showed that she remained functional despite her urinary symptoms. Tr. 25.  As the ALJ noted, Plaintiff was "able to go out to the store to shop for up to several hours and was able to travel eighty miles each way to a consultative examination." Tr. 25, 346, 592.

Moreover, no medical source opined that Plaintiff's urinary symptoms would require her to be off task at all, and Plaintiff has not identified any medical evidence that supports a more restrictive RFC. As the ALJ explained, however, he partially credited Plaintiff's subjective complaints and reasonably found that Plaintiff's symptoms may have been more severe than the medical evidence indicated but not as limiting as she alleged. Tr. 27. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p (stating that if a plaintiff's symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, the ALJ will consider such factors as her daily activities; the nature and intensity of pain or other symptoms; or the type, effectiveness and any adverse side effects of treatment.

Despite the ALJ's thorough and well-supported explanation for the 5% off-task limitation, Plaintiff nevertheless argues that more specific evidence is needed regarding the amount of time Plaintiff would be off task. *See* ECF No. 7-1 at 23-25. Contrary to Plaintiff's argument, however, "[t]he fact that the ALJ assigned a particular percentage range . . . to illustrate [Plaintiff's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence." *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (citing *Cosnyka v. Colvin*, 576 Fed. App'x

43, 46 (2d Cir. 2014)); *see also Mohamed v. Saul*, No. 3:18CV02015 (SALM), 2019 WL 3928585, at *11 (D. Conn. Aug. 20, 2019) (gleaning from the ALJ's decision that he gave plaintiff "the benefit of the doubt[ ]" when formulating the off-task time limitation in the RFC, as it appeared the ALJ did so due to plaintiff's complaints of pain documented throughout the record); *Kirkland v. Colvin*, No. 15-cv-6002P, 2016 WL 850909, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that the ALJ did not err by assessing specific limitations that did not precisely correspond to any medical opinion because the claimant's daily activities, treatment history, and consultative examiner's opinion supported the limitations).

Although Plaintiff cites *Cosnyka* to argue that the ALJ's 5% off-task limitation was too specific (*see* ECF No. 7-1 at 24), the Second Circuit rejected that argument in *Cosnyka*, clarifying that the problem was not that the ALJ included a highly specific limitation in the RFC finding, but rather that there was "no evidentiary basis" for that limitation. *Cosnyka*, 576 F.App'x at 46. As discussed above, the ALJ in this case sufficiently explained that he included the 5% off-task limitation to account for Plaintiff's urinary symptoms, but he also explained that the record did not support a finding that she would require an excessive amount of additional time off for these symptoms. Tr. 25. Accordingly, substantial evidence in the record supports the ALJ's finding that Plaintiff would be off task no more than five percent of the workday. *See Johnson v. Colvin*, 669 F. App'x at 47 (highly specific RFC findings are not problematic when supported by substantial evidence in the record).

As previously noted, Plaintiff bears the ultimate burden of proving that she was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the

ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

<u>**CONCLUSION**</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE